Robert E. Dunn (State Bar No. 275600)
rdunn@eimerstahl.com
EIMER STAHL LLP
1999 South Bascom Avenue
Suite 1025
Campbell, CA 95008
Telephone: (408) 889-1690

*Attorney for Defendant Walmart Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Robert Bonkowski and Alex Merkel, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Walmart Inc.<br><br>Defendant. | Case No. 2:25-cv-01462-DSF (PVCx)<br><br>**DEFENDANT WALMART INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO STAY THIS ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Removed from the Superior Court of Los Angeles County, California, No. 25STCV01308]<br><br>Complaint filed Jan. 17, 2025<br><br>District Judge Dale S. Fischer<br>Magistrate Judge Pedro V. Castillo<br><br>Date: March 31, 2025<br>Time: 1:30 P.M.<br>Courtroom: 7D |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 31, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 7D of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California, 90012, Defendant Walmart Inc. ("Walmart") will and hereby does move this Court to compel arbitration and to stay proceedings pending individual arbitration of the claims of Plaintiffs Robert Bonkowski and Alex Merkel ("Plaintiffs").

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 19, 2025. Plaintiffs oppose the Motion.

The Motion is brought pursuant to 9 U.S.C. § 3 and is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declarations of Stacey Krsulic and Ashish Agrawal filed concurrently herewith, all other matters of which the Court may take judicial notice, and any other argument or evidence that may be received by the Court upon hearing on this Motion.

Dated: February 27, 2025

*<u>/s/ Robert E. Dunn</u>*
Robert E. Dunn

# TABLE OF CONTENTS


INTRODUCTION .......... 1

STATEMENT OF FACTS .......... 2

I. Plaintiffs Agreed to Arbitrate All Disputes with Walmart .......... 2

II. Plaintiffs Sued Walmart in State Court and Asserted Claims on Behalf of a Putative Class of "Hundreds of Thousands" of Users .......... 6

LEGAL STANDARD .......... 7

ARGUMENT .......... 8

I. Plaintiffs Must Arbitrate Their Claims .......... 8

A. Plaintiffs Agreed to the Terms of Use, Which Contain an Arbitration Provision .......... 8

B. The Terms of Use Delegate All "Gateway" Questions of Enforceability and Scope to the Arbitrator .......... 12

C. Plaintiffs' Claims Fall Within the Scope of the Terms of Use .......... 13

D. The Arbitration Provision Is Enforceable .......... 15

II. The Case Should Be Stayed Pending Arbitration .......... 16

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Cases**

*Adelstein v. Walmart Inc.*, 728 F. Supp. 3d 762 (N.D. Ohio 2024) ..... 11, 14, 16

*Adibzadeh v. Best Buy, Co. Inc.*, No. 20-CV-06257-JSW, 2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) ..... 15

*Anderson v. Amazon.com, Inc. et al.*, 490 F. Supp. 3d 1265 (M.D. Tenn. 2020) ..... 11, 16

*Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320 (9th Cir. 2015) ..... 7

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ..... 9

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ..... 13

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022) ..... 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ..... 7, 8, 15

*Crawford v. Beachbody, LLC*, No. 14CV1583-GPC KSC, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ..... 10

*Donovan v. RRL Corp.*, 27 P.3d 702 (Cal. 2001) ..... 8

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ..... 8

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ..... 15

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000) ..... 15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ....................12

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023)....................7

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024)....................9, 10

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. 2023) ....................7

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .................... 10, 11

*Marmet Health Care Ctr., Inc. v. Brown*,
565 U.S. 530 (2012) ....................7

*Maybaum v. Target Corp.*,
No. 2:22-cv-00687-MCS-JEM, 2022 WL 1321246 (C.D. Cal. May 3, 2022)....13

*Maynez v. Walmart, Inc.*,
479 F. Supp. 3d 890 (C.D. Cal. 2020)....................11

*Mora v. Shin Honda, Inc.*,
32 F. App'x 854 (9th Cir. 2002) ....................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .................... 13, 15

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)....................11

*Norcia v. Samsung Telecomms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017)....................9

*Norde v. Ctr. for Autism & Related Disorders, LLC*,
No. 22-CV-00639-DMR, 2022 WL 4227274 (N.D. Cal. Aug. 22, 2022)...........14

*Oracle Am., Inc. v. Myriad Group A.G.*,
724 F.3d 1069 (9th Cir. 2013)....................13

*Perry v. MLB Advanced Media, L.P.*,
No. CV 18-1548 PSG (GJSx), 2018 WL 5861307 (C.D. Cal. May 30, 2018)....16

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ....................................................9

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ....................................................................8, 12

*Rogolino v. Walmart, Inc.*,
No. 24-14308-CIV, 2025 WL 396453 (S.D. Fla. Feb. 4, 2025).................. 10, 11

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987) ....................................................................15

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ....................................................................16

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ....................................................9

*Tice v. Amazon.com, Inc.*,
845 F. App'x 535 (9th Cir. 2021) ....................................................15

*Torres v. Secure Commc'n Sys., Inc.*,
No. SACV 20-00980-JVS (JDEx), 2020 WL 6162156
(C.D. Cal. July 25, 2020) ....................................................................13

*Torres v. Veros Credit LLC*,
No.8:23-CV-00688-DOC-DFM, 2023 WL 5505887
(C.D. Cal. July 13, 2023) ....................................................................15

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960) ....................................................................14

**Statutes**

9 U.S.C. § 2 ....................................................................15

9 U.S.C. § 3 ....................................................................7, 16

**Rules**

AAA Consumer Arbitration Rule 14 ....................................................13

# INTRODUCTION

Plaintiffs Robert Bonkowski and Alex Merkel ("Plaintiffs") allege that Defendant Walmart Inc. ("Walmart") unlawfully disclosed their sensitive health information to third parties after they made purchases on Walmart.com. But this Court is the wrong forum for resolving Plaintiffs' claims because the parties agreed to arbitrate all disputes arising out of Plaintiffs' use of Walmart's website.

Plaintiffs admit that they purchased items on Walmart's website. To do so, they had to go through either Walmart's "Check Out" process or its "Buy now" process. At the end of both processes, customers confront a "Place order" button. Immediately above or below that button, Walmart prominently advises customers: "By placing this order, you agree to our Privacy Policy and Terms of Use." The Terms of Use can be accessed by clicking on the hyperlinked "Terms of Use."

When Plaintiffs made their purchases, they clicked the "Place order" button and thereby agreed to Walmart's Terms of Use. Those Terms contain an arbitration agreement that broadly requires customers to arbitrate "ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART." The arbitration agreement explicitly waives the right to assert class actions in court or in arbitration.

The Ninth Circuit and numerous courts around the country have held that this type of purchase process creates a binding agreement to arbitrate. Indeed, numerous courts have addressed Walmart's purchase process specifically and concluded that Walmart's Terms of Use are conspicuous and provide any reasonable customer with notice of the arbitration agreement. Accordingly, Plaintiffs manifested their assent to

Walmart's Terms of Use, including the arbitration agreement, when they made purchases on Walmart.com.

This Court need not decide whether the claims asserted here are within the scope of the arbitration agreement or whether the agreement is enforceable because the Terms of Use delegate those gateway questions to the arbitrator. Walmart's Terms of Use expressly incorporate the AAA's Consumer Arbitration Rules, and those rules give the arbitrator jurisdiction to decide questions of scope and enforceability. The Ninth Circuit, consistent with courts across the country, has held that incorporation of the AAA's Consumer Arbitration Rules constitutes a clear and unmistakable delegation of these gateway questions to the arbitrator. But even if the Court were to reach those issues, the claims here are plainly within the scope of the arbitration agreement because they arise out of Plaintiffs' use of Walmart's website, and Walmart's arbitration agreement is enforceable.

This Court should therefore GRANT Walmart's motion to compel arbitration and stay the case pending the outcome of binding arbitration before the AAA.

## STATEMENT OF FACTS

### I. Plaintiffs Agreed to Arbitrate All Disputes with Walmart

Plaintiffs allege that they "used walmart.com" to "purchas[e] medications." Compl. at 2 ¶ 8.[1] Walmart's records confirm that Bonkowski and Merkel each made a purchase on Walmart.com on August 5, 2024. Declaration of Ashish Agrawal in

[1] The paragraph numbering in the Complaint starts with ¶ 1 on page 1 and runs through ¶ 75 on page 16, whereupon it unexpectedly restarts on page 17 with a second ¶ 17. *See* ECF No. 1-1. This Motion therefore cites to the Complaint using both page and paragraph numbers.

Support of Walmart Inc.'s Motion to Compel Arbitration and to Stay This Action Pending Arbitration ("Agrawal Decl.") ¶¶ 13, 14.

A customer may complete a purchase on Walmart.com through either the "Check Out" process or the "Buy now" process. *Id.* ¶ 2. At the conclusion of both processes, there is a blue button that reads "Place order for" followed by the total amount of the item(s) and any applicable shipping and taxes. *Id.* ¶ 3.

When the "Check Out" process is used, the "Place order" button appears directly above text stating: "By placing this order, you agree to our Privacy Policy and Terms of Use." *Id.* As shown below, the phrases "Privacy Policy" and "Terms of Use" are in grey text, underlined, and, if clicked, present the customer with the full text of Walmart's Privacy Policy and Terms of Use. *Id.* ¶ 4.




*Id.* ¶ 5. Thus, before clicking the "Place order" button, the customer can view the entire text of the Privacy Policy and Terms of Use by clicking on the hyperlinks "Privacy Policy" or "Terms of Use." *Id.* ¶ 4.

Similarly, when the customer uses the "Buy now" process, the blue "Place order" button appears immediately below the language stating: "By placing this order, you agree to our Privacy Policy and Terms of Use." *Id.* ¶ 6. The underlined phrases are hyperlinks to the applicable Terms of Use and Privacy Policy pages. *Id.*




The requirement to click the "Place order" button is substantially the same through the Walmart.com web browser or through the Walmart App. *Id.* ¶ 8. Accordingly, when Plaintiffs made their purchases, they clicked the "Place order" button. *Id.* ¶ 15.

Throughout the relevant period,[2] Walmart's Terms of Use contained an arbitration agreement. The Terms of Use begins by telling customers in capital letters:

> IMPORTANT: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 20 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND THE WALMART ENTITIES ARE EACH GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.

Declaration of Stacey Krsulic in Support of Walmart Inc.'s Motion to Compel Arbitration and to Stay This Action Pending Arbitration ("Krsulic Decl.") ¶ 3. At all times relevant to the claims at issue in the Complaint, Walmart's Terms of Use have included the following language:

---

[2] The Complaint defines the "Class Period" as the period "beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment." Compl. at 11 ¶ 48.

> **UPDATES**: We may update these Terms of Use from time to time by notifying you of such changes by any reasonable means, including by posting a revised Terms of Use through the Walmart Sites. Any such changes will not apply to any dispute between you and us arising prior to the date on which we posted the revised Terms of Use incorporating such changes or otherwise notified you of such changes. You agree that it your responsibility to regularly check Walmart.com for any updated Terms of Use. In addition, by continuing to use or access any of the Walmart Sites or otherwise engaging with Walmart after we post any changes, you accept the updated Terms of Use.

*Id*. ¶ 4.

At all times relevant to the claims at issue in the Complaint, Walmart's Terms of Use have included a section titled "20. Disputes, Arbitration, and Applicable Law." *Id*. ¶ 5. At all times relevant to the claims at issue in the Complaint, Section 20 of Walmart's Terms of Use has included the following language:

> ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART . . . WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION.

*Id*. ¶ 6. The Terms of Use further provide, "The arbitration will be administered by the [American Arbitration Association ('AAA')] pursuant to the current AAA Consumer Arbitration Rules, except to the extent modified by these Terms of Use." *Id*. ¶ 7. The Terms of Use also include a class action waiver: "YOU AND WALMART AGREE THAT ANY ARBITRATION REQUIRED BY THE ARBITRATION AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS." *Id*. ¶ 8.

### II. Plaintiffs Sued Walmart in State Court and Asserted Claims on Behalf of a Putative Class of "Hundreds of Thousands" of Users

Despite the agreement to arbitrate, Plaintiffs filed suit on January 17, 2025, in California state court, bringing this putative class action "on behalf of all California residents who have accessed and used walmart.com." Compl. at 1 ¶ 1. Plaintiffs allege that Walmart "shares its customers' identities and online activity" through the Facebook Pixel, a piece of code on the Walmart website that, according to Plaintiffs, "surreptitiously directs [a] user's browser to contemporaneously send a separate message to Facebook's servers." *Id.* at 9 ¶ 31; *id.* at 8 ¶ 28. Plaintiffs allege that patients making purchases on the pharmacy page on walmart.com have had their "protected health information" "intercept[ed]." *Id.* at 9 ¶¶ 32–33. Plaintiffs allege that Walmart "violates [the California Information Privacy Act ('CIPA')] by aiding and permitting third parties to receive its patients' online communications through its website without their consent." *Id.* at 15 ¶ 64. Plaintiffs further allege that Walmart "is violating the [California Confidentiality of Medical Information Act ('CMIA')] by disclosing its patients' medical information with Facebook along with the patients' Facebook ID." *Id.* at 16 ¶ 74. Finally, Plaintiffs assert "invasion of privacy claims under California's Constitution." *Id.* at 17 ¶ 23. Plaintiffs seek statutory damages, attorneys' fees, and injunctive and declaratory relief. *See id.* at 15 ¶¶ 66–67; *see also id.* at 16 ¶ 75.

Plaintiffs define the putative class as "California residents who, during the class period, had their personally identifiable information or protected health information improperly disclosed to Facebook as a result of using walmart.com." *Id.*

at 11 ¶ 46. Plaintiffs purport to represent "hundreds of thousands of individuals in the Class." *Id*. at 12 ¶ 50.

Walmart filed a timely notice of removal on February 20, 2025. ECF No. 1.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that upon "application of one of the parties," a case "upon any issue referable to arbitration under an agreement in writing for such arbitration" "shall [be] stay[ed]" "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The FAA "'reflects an emphatic federal policy in favor of arbitral dispute resolution' . . . that requires courts to 'rigorously enforce agreements to arbitrate.'" *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (quoting *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012)). "A court must interpret arbitration provisions liberally, resolving doubts in favor of arbitration." *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1068 (C.D. Cal. 2023).

A party seeking to compel arbitration has the burden to show the existence of an agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Once the party seeking to compel has carried that burden, a party opposing arbitration has the burden of proving that its claims are outside the scope of the agreement or that the agreement is unenforceable. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The FAA gives courts a "limited" role in determining whether to compel arbitration. *Id*. The court considers only two questions: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses

the dispute at issue." *Id*. Parties can also agree "to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Where the parties have delegated such questions to the arbitrator, the court should compel arbitration and allow the arbitrator to resolve the delegated issues. *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1025 (9th Cir. 2022).

## ARGUMENT

### I. Plaintiffs Must Arbitrate Their Claims

Plaintiffs agreed to Walmart's Terms of Use, which contain an arbitration provision. This arbitration provision delegates all "gateway" questions of enforceability and scope to the arbitrator. The Court should therefore decline to reach those issues and allow the arbitrator to resolve questions of enforceability and scope. But even if the Court were to reach those gateway issues, it should compel arbitration because Plaintiffs' claims fall within the scope of the arbitration provision, and the arbitration provision is enforceable.

#### A. Plaintiffs Agreed to the Terms of Use, Which Contain an Arbitration Provision

When deciding whether there is an agreement to arbitrate, courts generally "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under California law, "[a]n essential element of any contract is the consent of the parties." *Donovan v. RRL Corp.*, 27 P.3d 702, 709 (Cal. 2001), *as modified* (Sept. 12, 2001). "Courts must

determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (citation omitted).

Here, Plaintiffs manifested their assent to be bound by the terms of Walmart's arbitration provision when they clicked the "Place order" button to complete their purchases on Walmart's website. *See* Agrawal Decl. ¶ 15. The Ninth Circuit has held that users are bound by the terms of such hybrid clickwrap/browsewrap agreements where, as here, they manifest their assent to a company's terms of service by clicking a button next to a notice that doing so constitutes acceptance of the terms. *See, e.g.*, *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020 (9th Cir. 2024) (user was bound to arbitrate when he clicked a "Play" button next to a notice reading: "By tapping 'Play' I accept the Terms of Use and acknowledge the Privacy Policy"). Courts hold these types of agreements enforceable when two conditions are satisfied: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at 1014 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)); *see, e.g.*, *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 582 (N.D. Cal. 2020) (users were bound to arbitrate when they clicked a "Sign Up" button directly above a statement reading: "By tapping Sign Up . . . you agree to our Terms and Conditions and Privacy Statement"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (user was bound to arbitrate when she "was provided with an opportunity to review the terms of service in the form of a

hyperlink immediately under the 'I accept' button"); *Crawford v. Beachbody, LLC*, No. 14CV1583-GPC KSC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (concluding that "the parties agreed to Terms and Conditions of Use" because plaintiff "had to click an orange button that read 'PLACE ORDER,'" and immediately above that button was the following sentence: "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions.").

Both *Keebaugh* elements are met here, as Plaintiffs were presented with a clear hyperlink to the Terms of Use before making any purchase on Walmart's website and manifested their assent by clicking the "Place order" button. Agrawal Decl. ¶¶ 2–7. Because "[t]he position of [Walmart's] Terms hyperlink is directly above [or directly below] the 'Place Order' button," "it cannot be missed when a user makes a purchase." *Rogolino v. Walmart, Inc.*, No. 24-14308-CIV, 2025 WL 396453, at *3 (S.D. Fla. Feb. 4, 2025); *see* Agrawal Decl. ¶¶ 4–6. Walmart thus "provided sufficient notice for constructive assent" and created "a binding arbitration agreement between" Plaintiffs and itself. *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020). *Lee* is instructive. There, the court concluded that the plaintiff was bound by the company's arbitration provision because "each time he clicked the 'Place Order' button when placing an order for tickets . . . the website displayed the phrase, 'By clicking "Place Order," you agree to our Terms of Use,'" which was displayed "directly above the button." *Id.* at 394–95. In *Lee*, as here, the phrase "'Terms of Use' . . . contained a hyperlink to [the company's] Terms." *Id.* at 395. The Ninth Circuit thus concluded that the plaintiff "validly assented to [the

company's] Terms of Use, including the arbitration provision . . . each time he clicked the 'Place Order' button." *Id.* at 394–95.

The same is true here, because "'the conspicuousness and placement of the "Terms of Use" hyperlink' on the Walmart [website] would have provided 'a reasonably prudent user [with] inquiry notice of' the Terms of Use agreement." *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 897 (C.D. Cal. 2020) (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014)). Walmart's Terms of Use alert customers to the existence of the mandatory arbitration agreement, including the class waiver, in capitalized font at the top of the document. Krsulic Decl. ¶ 3. Plaintiffs were thus adequately put on notice that placing their orders would make them parties to the arbitration agreement and waive their right to maintain a class action.

Courts around the country have repeatedly found that by purchasing products on the Walmart website, customers assented to Walmart's Terms of Use and thus entered into an enforceable arbitration agreement with Walmart. *See, e.g.*, *Maynez*, 479 F. Supp. 3d at 897 (finding that "Plaintiff assented to the arbitration clause when she made her April 9, 2019 purchase"); *Adelstein v. Walmart Inc.*, 728 F. Supp. 3d 762, 768 (N.D. Ohio 2024) (finding that Walmart's Terms of Use were "reasonably communicated to Plaintiff via his January 2022 purchase"); *Rogolino*, 2025 WL 396453, at *3 (finding that Walmart's "Terms are sufficiently conspicuous to place Plaintiff, and other members of the putative class, on inquiry notice such that the arbitration agreement between the parties is enforceable"); *Anderson v. Amazon.com, Inc. et al.*, 490 F. Supp. 3d 1265, 1275–76 (M.D. Tenn. 2020) (granting

Walmart's motion to compel arbitration because "[t]he Terms of Use were not hidden from the consumer," "they required assent and confrontation by the user," and "[t]he hyperlink was prominently displayed directly above the 'Place Order' button which was required to complete a purchase"); *Brown v. Walmart Inc.*, No. 5:24-CV-5144, 2025 WL 400729, at *1 (W.D. Ark. Jan. 31, 2025) (parties agreed that "an enforceable arbitration agreement exists"). This Court should likewise hold that Plaintiffs agreed to Walmart's Terms of Use, including the arbitration agreement and class waiver, when they made their purchases on the Walmart website.

**B. The Terms of Use Delegate All "Gateway" Questions of Enforceability and Scope to the Arbitrator**

Under the FAA, parties "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr.*, 561 U.S. at 68–69. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.*

The Terms of Use provide that the arbitration will be conducted by the AAA "pursuant to the current AAA Consumer Arbitration Rules." Krsulic Decl. ¶ 7. The AAA's Consumer Arbitration Rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any

claim or counterclaim." Rule 14(a), Consumer Arbitration Rules, American Arbitration Association.[3]

The Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank,* 796 F.3d 1125, 1130 (9th Cir. 2015). "Virtually every circuit to have considered the issue" has reached the same conclusion. *Id.* (quoting *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)). The "majority of courts" in this Circuit have also "concluded that *Brennan* applies equally to sophisticated and unsophisticated parties." *Maybaum v. Target Corp.*, No. 2:22-cv-00687-MCS-JEM, 2022 WL 1321246, at *5 (C.D. Cal. May 3, 2022) (citing *Torres v. Secure Commc'n Sys., Inc.*, No. SACV 20-00980-JVS (JDEx), 2020 WL 6162156, at *4 (C.D. Cal. July 25, 2020)).

Because Walmart's Terms of Use incorporate the AAA's rules, the parties have delegated all "gateway" questions of scope and enforceability to the arbitrator. The Court should therefore compel arbitration and decline to decide whether the dispute is within the scope of the Terms of Use, or whether those Terms are enforceable.

**C. Plaintiffs' Claims Fall Within the Scope of the Terms of Use**

Even if the Court were to reach the issue, it would have to compel arbitration because the arbitration agreement plainly encompasses Plaintiffs' claims. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). And here, Plaintiffs expressly agreed to arbitrate "ALL DISPUTES

[3] https://adr.org/sites/default/files/Consumer%20Rules.pdf.

ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART." Krsulic Decl. ¶ 6. Arbitration provisions containing such broad language give rise to a presumption of arbitrability. *Mora v. Shin Honda, Inc.*, 32 F. App'x 854, 856 (9th Cir. 2002). Accordingly, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

All three of the counts pleaded in the Complaint fall within the scope of the arbitration agreement because they turn on Walmart's alleged interception and disclosure of information that Plaintiffs allegedly revealed while using Walmart's website and purchasing products on the Walmart.com pharmacy page. *See* Compl. at 2 ¶ 8. This dispute thus "ARIS[ES] OUT OF" an "ASPECT OF THE RELATIONSHIP BETWEEN [Plaintiffs] AND WALMART." *See* Krsulic Decl. ¶ 6. Indeed, Plaintiffs' "claims necessarily require [their] use of Walmart.com" and "are of the kind explicitly covered by the [Terms of Use]: BASED IN . . . STATUTE." *Adelstein*, 728 F. Supp. 3d at 769; *see also* Krsulic Decl. ¶ 6. Plaintiffs' claims are thus subject to arbitration.[4]

---

[4] There is nothing about the specific claims asserted here—alleged violations of CIPA, the CMIA, and the California constitutional right to privacy—that changes this result. Courts in this Circuit regularly compel arbitration of these types of claims. *See, e.g.*, *Norde v. Ctr. for Autism & Related Disorders, LLC*, No. 22-CV-00639-DMR, 2022 WL 4227274, at *4 (N.D. Cal. Aug. 22, 2022) (granting motion

**D. The Arbitration Provision Is Enforceable**

Arbitration agreements governed by the FAA are presumed valid and enforceable. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225–26 (1987). In enacting the FAA, Congress intended to reverse longstanding judicial hostility towards arbitration and support a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). The FAA therefore mandates enforcement of a valid arbitration agreement. 9 U.S.C. § 2. The plaintiff bears the burden to overcome the presumption of validity by showing that the agreement is unconscionable or otherwise unenforceable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

Here, nothing in the Terms of Use renders them unenforceable.[5] Courts applying California law routinely find similar arbitration agreements to be valid and enforceable. *See, e.g.*, *Adibzadeh v. Best Buy, Co. Inc.*, No. 20-CV-06257-JSW, 2021 WL 4440313, at *7 (N.D. Cal. Mar. 2, 2021) (holding that Best Buy's terms of use were not procedurally or substantively unconscionable); *Perry v. MLB Advanced*

to compel arbitration of CMIA claim); *Tice v. Amazon.com, Inc.*, 845 F. App'x 535, 537 (9th Cir. 2021) (reversing denial of motion to compel arbitration of CIPA claim); *Torres v. Veros Credit LLC*, No.8:23-CV-00688-DOC-DFM, 2023 WL 5505887, at *1 (C.D. Cal. July 13, 2023) (granting motion to compel arbitration of privacy claim under California Constitution).

[5] Because Plaintiffs have the burden of proving that the arbitration provision is unenforceable, *Chiron*, 207 F.3d at 1130, Walmart will respond to any argument Plaintiffs may assert as to the enforceability of the arbitration agreement in its reply brief.

*Media, L.P.*, No. CV 18-1548 PSG (GJSx), 2018 WL 5861307, at *4–7 (C.D. Cal. May 30, 2018) (finding that no term in the arbitration agreement was "so one-sided as to shock the conscience"). Therefore, if the Court reaches the issue, it Court should find Walmart's Terms of Use enforceable, as numerous courts have done. *See, e.g.*, *Adelstein*, 728 F. Supp. 3d at 765; *Anderson*, 490 F. Supp. 3d at 1274–76.

## II. The Case Should Be Stayed Pending Arbitration

The FAA provides that when a court enforces an agreement to arbitrate, the court "shall" "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (the "plain statutory text" of 9 U.S.C. § 3 "requires a court to stay the proceeding" once the court determines that the plaintiffs' claims are subject to arbitration). Because Plaintiffs agreed to arbitrate their claims, the Court must stay the litigation under the FAA.

## CONCLUSION

Plaintiffs agreed to arbitrate their claims against Walmart. This Court should therefore GRANT Walmart's motion to compel arbitration and stay the litigation pending the outcome of those proceedings.

Dated: February 27, 2025

Respectfully submitted,

By: /s/ *Robert E. Dunn*

Robert E. Dunn (State Bar No. 275600)
rdunn@eimerstahl.com
EIMER STAHL LLP
1999 South Bascom Avenue
Suite 1025

Campbell, CA 95008
Telephone: (408) 889-1690

*Attorney for Defendant Walmart Inc*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Walmart Inc., certifies that this Memorandum of Points and Authorities contains 4,247 words, which complies with the word limit of L.R. 11-6.1. The undersigned further certifies that this Memorandum of Points and Authorities contains 16 pages, which complies with the page limit set forth in Rule 4.c. of Judge Fischer's standing order.

Dated: February 27, 2025

*/s/ Robert E. Dunn*
Robert E. Dunn

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2025, the foregoing document was filed electronically with the Clerk of the Court and sent by electronic mail to the following:

Shaun Setareh
shaun@setarehlaw.com
Thomas Segal
thomas@setarehlaw.com
Brian Louis
brian@setarehlaw.com
SETAREH LAW GROUP
420 N. Camden Drive, Suite 100
Beverly Hills, California 90210

Dated: February 27, 2025

*/s/ Robert E. Dunn*
Robert E. Dunn