Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
Brian Louis (SBN 353058)
brian@setarehlaw.com
SETAREH LAW GROUP
420 N. Camden Drive, Suite 100
Beverly Hills, California 90210
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiffs ROBERT BONKOWSKI & ALEX MERKEL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROBERT BONKOWSKI & ALEX MERKEL, individually and on behalf of all other persons similarly situated,

*Plaintiffs*,

v.

WALMART, INC., a Delaware Corporation,

*Defendants*.

Case No. 2:25-cv-01462-DSF (PCVx)

**PLAINTIFFS' OPPOSITION TO DEFENDANT WALMART, INC.'S MOTION TO COMPEL ARBITRATION**

Complaint filed: January 17, 2025

District Judge Dale S. Fischer
Magistrate Judge Pedro V. Castillo

Page(s)

Cases

t 12-13 ........ 8
*A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473 (1982) ........ 16
*Ahstrom v. DHI Mortgage Company, Ltd., L.P.*, 21 F.4th 631 (2021) ........ 6
*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000) ........ passim
*AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643 (1986) ........ 11
*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ........ 7, 8
*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) ........ 12
*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ........ 8, 9
*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ........ 10
*Chabolla v. Class Pass Inc.*, 129 F.4th 1147 (9th Cir. 2025) ........ 5, 7
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ........ 6
Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005) ........ 17
*Donovan v. RRL Corp.*, 27 P.3d 702 (Cal. 2001) ........ 7
*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ........ 6, 11
*Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846 (2001) ........ 15
*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) ........ 6
*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000) ........ 6
*Harper v. Ultimo*, 113 Cal.App.4th 1402 (2003) ........ 12, 16
*Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024) ........ passim

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ........ 11
*Ingalls v. Spotify USA, Inc.*,
2016 WL 6679561 (N.D. Cal. 2016) ........ 9
*Int'l Bhd. of Teamsters*,
957 F.3d ........ 6
*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ........ 7
*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
845 F.3d 979 (9th Cir. 2017) ........ 6
*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ........ 8
*Local Joint Exec. Bd. v. Mirage Casino-Hotel, Inc.*,
911 F.3d 588 (9th Cir. 2018) ........ 6
*Magill v. Wells Fargo Bank, N.A.*,
2021 WL 6199649 (N.D. Cal. 2021) ........ 9
*Maynez v. Walmart, Inc.*,
479 F. Supp. 3d 890 (C.D. Cal. 2020) ........ 8
*McClelland v. Cellco Partnership*.,
2022 WL 2390997 (N.D. Cal. 2022) ........ 9
*McGill v. Citibank*, N.A.,
2 Cal.5th 945 (Cal. 2017) ........ 5, 18
*Meadows v. Dickey's Barbecue Restaurants Inc*.,
144 F.Supp.3d 1069 (N.D. Cal. 2015) ........ 9
*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) ........ 13, 15
*OTO, LLC v. Kho*,
8 Cal.5th 111 (2019) ........ 11
*Patterson v. ITT Consumer Fin. Corp*.,
14 Cal.App.4th 1659 (1993) ........ 16
*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ........ 10
*Serpa v. Cal. Sur. Investigations, Inc*.,
215 Cal.App.4th 695 (2013) ........ 13
*Tompkins v. 23 and Me, Inc*.,
2014 WL 2903752 (N.D. Cal. 2014) ........ 9

Statutes

9 U.S.C. §§ 1 ........ 5

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Plaintiffs Robert Bonkowski and Alex Merkel ("Plaintiffs") respectfully submit this Opposition to Defendant Walmart Inc.'s ("Walmart") Motion to Compel Arbitration and to Stay This Action Pending Arbitration (Dkt. 9, filed Feb. 27, 2025). For the reasons set forth below, the Court should deny Walmart's motion in its entirety.

## I. INTRODUCTION

Walmart seeks to compel arbitration of Plaintiffs' claims based on an arbitration agreement embedded in its Terms of Use, asserting that Plaintiffs assented to it by clicking the "Place order" button on Walmart.com and that the agreement is enforceable. This argument fails for two independent reasons. First, Plaintiffs did not unambiguously assent to the arbitration agreement, as required under California law and clarified by the Ninth Circuit in *Chabolla v. Class Pass Inc*., 129 F.4th 1147 (9th Cir. 2025). Second, even if assent were established, the arbitration agreement is unconscionable under California law, as articulated in *Armendariz v. Foundation Health Psychcare Services, In*c., 24 Cal.4th 83 (2000), and reinforced by the Ninth Circuit in *Heckman v. Live Nation Entertainment, Inc*., 120 F.4th 670 (9th Cir. 2024). Specific provisions—including a "mass action" waiver, a one-sided fee-shifting clause, and a limitation on relief that violates *McGill v. Citibank*, N.A., 2 Cal.5th 945 (Cal. 2017)—render the agreement (and also the delegation clause) unenforceable.

Walmart's reliance on outdated authorities predating *Chabolla* and *Heckman* is misplaced. These recent Ninth Circuit decisions have shifted the landscape in the context of consumer arbitration agreements, imposing stricter standards for assent and unconscionability in online arbitration agreements such as the one at issue here. Accordingly, the Court should deny Walmart's motion.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., a court must determine: (1) whether a valid agreement to arbitrate exists, and (2) whether it

encompasses the dispute. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). State law governs contract formation, while the party opposing arbitration bears the burden of proving defenses such as unconscionability. *Id.*; *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

## III. ARGUMENT

### 1. Plaintiffs Did Not Unambiguously Assent To The Arbitration Agreement

"The cardinal precept of arbitration is that it is 'simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.' " *Local Joint Exec. Bd. v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 595 (9th Cir. 2018) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "Because of this axiomatic principle, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Int'l Bhd. of Teamsters*, 957 F.3d at 1041 (internal alterations and quotation marks omitted) (citation omitted); *see also First Options*, 514 U.S. at 945 ("[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration ...."). Accordingly, the Supreme Court has instructed that "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010); *see also Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017)( "Although challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very existence of the contract are, in general, properly directed to the court." (internal citations omitted). Thus, "[w]here a party contests either or both matters, the court must resolve the disagreement." *Id.* at 299–300 (internal quotation marks omitted) (citation omitted). The Ninth Circuit has unambiguously held that "parties cannot delegate issues of formation to the arbitrator." *Ahstrom v. DHI Mortgage*

*Company, Ltd., L.P.* 21 F.4th 631 (2021) Therefore, the Court here may decide whether the parties entered into a contract.

Under California law, mutual assent is essential for contract formation, requiring an unambiguous manifestation of agreement to the terms. *Donovan v. RRL Corp*., 27 P.3d 702, 709 (Cal. 2001). For online agreements, the Ninth Circuit requires: (1) reasonably conspicuous notice of the terms, and (2) an action by the user that unambiguously manifests assent. *Keebaugh v. Warner Bros. Ent. Inc*., 100 F.4th 1005, 1014 (9th Cir. 2024) (*citing Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).

In *Chabolla v. Class Pass Inc*., 129 F.4th 1147 (9th Cir. 2025), the Ninth Circuit held that an arbitration provision in a website's terms of use did not satisfy this standard. There, users clicked a button to proceed without explicit notice that the action bound them to arbitration, and the terms were accessible only via a hyperlink. *Id*. at 1153. The court ruled that such a presentation failed to provide clear notice or elicit unambiguous assent, emphasizing that waiving significant rights like access to courts requires heightened clarity. *Id*.

Here, Walmart's checkout process mirrors *Chabolla*, and the Court should likewise hold that Plaintiffs here did not agree to be bound to the arbitration clause within the Terms of Use. Here, the "Place order" button is accompanied by a statement—"By placing this order, you agree to our Privacy Policy and Terms of Use"—with the Terms hyperlinked nearby in incredibly tiny, difficult to notice, grey (not black) text. Agrawal Decl. ¶¶ 4-6. However, nothing explicitly alerts users that clicking "Place order" binds them to arbitration. The arbitration provision is buried on page 23 of a 28-page document (Exhibit A, Dkt. 9-3, at 23), and the checkout interface does not require users to view or acknowledge it. This setup does not ensure that a reasonable user understands they are waiving judicial remedies. Like *Chabolla*, the hyperlink's proximity to the button is insufficient without conspicuous notice. Thus, Plaintiffs did not unambiguously assent. (*See Chabolla v. ClassPass Inc*. 129

F.4th 1147, 1158 ("it would be improper to infer that Chabolla manifested her assent on screen 1 to a notice she hadn't yet seen on screen 2. So further discussion on the conspicuousness of the notices on screens 2 and 3 would be non-dispositive and fruitless.")

A user's click of a button can be construed as an unambiguous manifestation of assent *only if* the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement. *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 857. "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id*. at 858. Here, the tiny grey print that appears, practically invisible, next to the Order button cannot possibly be construed as an unambiguous manifestation of assent to waive access to the courts.

Walmart's cited cases—e.g., *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393 (9th Cir. 2020), and *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890 (C.D. Cal. 2020)—predate *Chabolla* and apply a less stringent standard. *Chabolla's* 2025 ruling clarifies that assent requires more than mere proximity of a hyperlink; it demands explicit notice. As controlling authority, *Chabolla* renders Walmart's position untenable.

**2. Incorporation of the AAA Rules is Not Sufficient to Delegate Arbitrability**

Walmart argues that the incorporation of AAA Consumer Arbitration Rules delegates gateway issues to the arbitrator. Def.'s Mem. at 12-13.

The argument that incorporation of AAA rules is sufficient to delegate has its genesis in the Ninth Circuit's opinion in *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015). That case involved a dispute between a bank and one of its executives. *Id*. at 1126-27. The Ninth Circuit in deciding the case stressed that: "We limit our holding to the facts of the present case, which do involve an arbitration agreement between sophisticated parties." *Id*. at 1131. District courts within the Northern District (and for that matter within the Ninth Circuit) have generally held that the holding of *Brennan* is not applicable where the party opposing arbitration is not a

sophisticated party. *Meadows v. Dickey's Barbecue Restaurants Inc*., 144 F.Supp.3d 1069, 1078 (N.D. Cal. 2015)("After all, the question is whether the language of an agreement provides 'clear and unmistakable' evidence of delegation. To a large corporation (like Oracle) or a sophisticated attorney (like Brennan), it is reasonable to conclude that it does. But applied to an inexperienced individual, untrained in the law, such a conclusion is likely to be much less reasonable"; *Tompkins v. 23 and Me, Inc*., 2014 WL 2903752 (N.D. Cal. 2014) *12 (N.D. Cal. 2014); *McClelland v. Cellco Partnership*., 2022 WL 2390997 *3 (N.D. Cal. 2022): "Where at least one party is unsophisticated, courts in this district and elsewhere have routinely found that the incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability."; *Magill v. Wells Fargo Bank, N.A.*, 2021 WL 6199649 *5 (N.D. Cal. 2021); *Ingalls v. Spotify USA, Inc*., 2016 WL 6679561 *3-4 (N.D. Cal. 2016): "every district court decision in our circuit to address the question since Brennan has held that incorporation of AAA rules was insufficient to establish delegability in consumer contracts involving at least one unsophisticated party". Here, Plaintiffs bring their claims on behalf of a putative class of consumers placing orders on Wal Mart's website. Plaintiffs are not sophisticated litigants, they just wanted to make a purchase.

The correct question here is whether the language of an agreement provides 'clear and unmistakable' evidence of delegation. Delegation is not even mentioned in Wal Mart's arbitration agreement. Wal Mart is essentially arguing that an unsophisticated consumer such as the Plaintiffs here, prior to hitting the "Place Order" button, would theoretically click on the hyperlink near the Place Order button to read the Terms of Use, find and understand the incorporation of the AAA rules clause, and then *separately* go online to read the AAA Consumer Arbitration Rules to find Rule 14(a) where the delegation clause at issue resides; thereby affirmatively consenting to delegate arbitrability. This is absurd.

Wal Mart relies on *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) for Its assertion that the instant delegation clause at issue prevents this Court from looking at enforceability or unconscionability. Def.'s Mem. at 12. *Rent-A-Center* acknowledges that "[t]here are two types of validity challenges under § 2: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) The Supreme Court in *Rent-A-Center* then finds that an arbitration provision, such as a provision delegating arbitrability, may be severable from the remainder of the contract. "But that agreements to arbitrate are severable does not mean that they are unassailable. If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010) Here, Plaintiffs are challenging the validity of the precise agreement to arbitrate at issue. Therefore, the Court should consider the challenge before ordering compliance with the purported agreement.

Plaintiffs did not assent to the delegation clause at issue. In the real world, it is inconceivable that an unsophisticated consumer would click on the Terms of Use, read and recognize the incorporation of the AAA rules, and then *separately* go online to find a copy of those rules, and then read to page 17 where they would find the delegation clause at issue here in Rule 14(a). In Wal Mart's fictional universe, this ridiculous labyrinth adequately evinces Plaintiffs wholehearted consent to delegate arbitrability. To hold so would be an absurdity. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the

parties agreed about *that* matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original) (internal citations omitted) Whether the court or the arbitrator decides arbitrability is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986)

Here, the Parties have not clearly and unmistakably delegated arbitrability. Therefore this Court should decide the issue of enforceability and unconscionability raised below.

**3. The Delegation Clause is Unconscionable, and the Court May Consider the Entire Agreement if Determining Unconscionability**

If the Court determines that Plaintiffs assented to the agreement (which of course Plaintiffs contend that they did not)**,** the delegation provision itself is unconscionable here. To demonstrate unconscionability of Wal Mart's delegation clause under California law, Plaintiffs must show that the delegation provision is both procedurally and substantively unconscionable. *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 681 (2024) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (2000). The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. *Id*. If there is "substantial procedural unconscionability ..., even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable." *Id.* (citing *OTO, LLC v. Kho*, 8 Cal.5th 111, 130 (2019)

In *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (2024), the Ninth Circuit determined that the delegation clause, directly analogous to the one here, was unconscionable. In doing so, the Ninth Circuit explicitly held that "[i]n deciding whether a delegation clause is unenforceable, our analysis is not limited to the bare text of the clause." *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th

670, 680 (2024) "In evaluating an unconscionability challenge to a delegation provision under California law, a court must be able to interpret the provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well." *Bielski v. Coinbase, Inc*., 87 F.4th 1003, 1012 (9th Cir. 2023). A court must "consider the parts of the agreement that impact[ ] the delegation provision to decide its enforceability." *Id*. at 1011. "[I]f a court cannot look through the delegation provision to the rest of the contract, a court would fail to see how delegating questions of arbitrability to an arbitrator was unconscionable." *Id*. at 1012.

In *Heckman*, the delegation provision was contained directly in the arbitration agreement and was not incorporated by reference to the AAA rules. Here, the arbitration agreement's provision which incorporates the AAA rules expressly allows for Wal Mart to unilaterally change this provision at any time. "The arbitration will be administered by the AAA pursuant to the current AAA Consumer Arbitration Rules, *except to the extent modified by these Terms of Use*." Krsulic Decl., ¶ 7. Wal Mart reserves for itself the right to modify the incorporation of the AAA rules at any time unilaterally with the only notification to the consumer being the posting of a revised Terms of Use through the Walmart Sites. *Id*. at ¶ 4 ("We may update these Terms of Use from time to time by notifying you of such changes by any reasonable means, including by posting a revised Terms of Use through the Walmart Sites") So Wal Mart is arguing that its consumers, and Plaintiffs, should be bound to this purported delegation provision, found on page 17 of the AAA rules incorporated by reference on page 26 of an arbitration agreement the consumer was not required to acknowledge, look at, or sign, and Wal Mart can unilaterally change this provision whenever it wants to by posting any revision to its own website. This is highly unconscionable, especially in the context of an adhesion contract like the one at issue here. Under California law, "oppression is even more onerous" when a "clause pegs both the scope and procedure of the arbitration to rules which might change." *Harper*

*v. Ultimo*, 113 Cal.App.4th 1402, 1407 (2003); *see also Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal.App.4th 695 (2013) The elements of oppression and surprise are "satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.' " *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (en banc) That is exactly what is happening here in spades, rendering the delegation provision unconscionable on its own.

Wal Mart's arbitration agreement includes the same type of mass arbitration protocols that the Ninth Circuit took particular issue with in *Heckman* when the Ninth Circuit determined that the delegation clause in that case was unconscionable and therefore unenforceable. The Ninth Circuit in *Heckman* explicitly noted "[i]f the arbitrator in the bellwether cases holds that the delegation clause is valid, that holding is binding on the plaintiffs in all of the batched non-bellwether cases. That is, the validity of the delegation clause in all cases is decided in bellwether cases, even though plaintiffs in the non-bellwether cases have no right to participate in the bellwether cases. Indeed, plaintiffs in the non-bellwether cases will not even know the decision in the bellwether case as to the validity of the delegation clause until that decision is invoked against them." *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 683 (2024) Wal Mart is attempting to impose these same kinds of limitations here. Wal Mart's arbitration agreement, in a section labelled "Process for Arbitration Bellwhether Demands" states as follows:

> If twenty-five (25) or more Demands for arbitration of a dispute or claim subject to the Arbitration Agreement are initiated (i) that involve common questions of law or fact and (ii) where the initiating parties are represented by the same law firm, the same group of coordinated law firms, or the same representative, then such Demands shall be coordinated pursuant to this paragraph. The group of claimants and group of respondents shall each select five (5) Demands, for a total of ten (10), to be filed with AAA (collectively the 'Bellwether Demands'). Each of the Bellwether Demands shall be assigned by AAA to a different arbitrator chosen from its national roster. After ninety (90) days from the date all Bellwether Demands have been arbitrated and any

appeals exhausted, any remaining Demands subject to this paragraph may be filed with AAA.

Exhibit A, Dkt. 9-3, at 26 ¶ 6. For the exact same reasons as discussed in *Heckman*, Wal Mart's Bellwhether Demands renders the delegation clause unenforceable. Here, should there be more than 25 demands, Wal Mart is explicitly delaying the other arbitrations for a period that could take *many many years* should the Bellweather Demands be litigated exhaustively through appeals.

As discussed further below, the agreement also includes a "Mass Action" waiver that purports to be a blanket prohibition against "a situation in which a party is represented by a law firm or other representative, or a collection of law firms or other representatives, that has initiated more than one hundred (100) arbitration Demands with common questions of law or fact against Walmart within 180 days of initiating your arbitration Demand." Exhibit A, Dkt. 9-3, at 25 ¶ 2. This term directly reveals the extreme unconscionability of the delegation clause at issue here. Not only is Wal Mart hiding the delegation provision from its consumers through a labyrinth of separate pages and self willed research, but It's attempting to use that delegation provision to enforce an arbitration agreement that expressly seeks to limit the consumer's ability to seek adequate representation for that arbitration. This shocks the conscience. These mass arbitration provisions are exactly the sorts of provisions that the Ninth Circuit found creates a process that poses a serious risk of being fundamentally unfair to claimants and therefore unconscionable. *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 685 (2024)

Wal Mart's arbitration agreement also permits the arbitrator to award fees and costs for a "frivolous claim, counterclaim, or appeal" but omits relief for a frivolous defense. Exhibit A, Dkt. 9-3, at 26 ¶ 5(5). This type of fee shifting provision is blatantly unconscionable. In the context of the delegation clause, should an arbitrator determine that Plaintiffs have made any arguments which the arbitrator determines to be "frivolous" as to the issue of arbitrability, it is conceivable that the arbitrator could

award exorbitant fees and costs against them, but not against Wal Mart should it make a frivolous defense.

## IV. THE ARBITRATION AGREEMENT IS UNCONSCIONABLE AND UNENFORCEABLE

Even if Plaintiffs assented, the arbitration agreement is unenforceable because it is unconscionable under California law. *Armendariz v. Foundation Health Psychcare Services, Inc*., 24 Cal.4th 83, 114 (2000), requires both procedural and substantive unconscionability. Here, both are present, and specific provisions amplify the agreement's unenforceability.

### A. Procedural Unconscionability

Procedural unconscionability arises from oppression or surprise due to unequal bargaining power. *Armendariz*, 24 Cal.4th at 114. The elements of oppression and surprise are "satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.' " *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1281 (9th Cir. 2006) (en banc) (quoting *Flores v. Transamerica HomeFirst, Inc*., 93 Cal.App.4th 846 (2001)) (alteration in original)

Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion defined as "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms," *Flores v. Transamerica HomeFirst, Inc*., 93 Cal.App.4th 846, 848 (2001) Walmart's Terms of Use are a classic adhesion contract. Plaintiffs, as consumers, had no opportunity to negotiate or opt out of the arbitration provision to complete their purchases. Agrawal Decl. ¶¶ 4-6; Exhibit A, Dkt. 9-3. The terms are presented in a standardized online format, accessible only via hyperlink, with no evidence that Plaintiffs could modify them. In fact, Wal Mart's Terms of Use explicitly allow Wal Mart to unilaterally change the

Terms of Use simply by "notifying" you of such changes by posting a revised Terms of Use through the Walmart Sites. Krsulic Decl. ¶ 4

Surprise is a "function of the disappointed reasonable expectations of the weaker party," *Harper v. Ultimo*, 113 Cal.App.4th 1402 (2003), and can arise when "the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms," *Patterson v. ITT Consumer Fin. Corp*., 14 Cal.App.4th 1659, 1664 (1993) (quoting *A & M Produce Co. v. FMC Corp*., 135 Cal.App.3d 473 (1982)). Walmart's arbitration provision is effectively hidden from consumers, buried within the voluminous 28-page Terms of Use, the arbitration provision begins on page 23 (Exhibit A, Dkt. 9-3, at 23), accessible only through a hyperlink labeled "Terms of Use" near the "Place order" button during checkout (Agrawal Decl., Dkt. 9-1, ¶¶ 4-6). This hyperlink appears in "grey text, underlined" (*Id*. ¶ 4), a design choice that makes it minuscule and difficult to discern against the prominent blue "Place order" button, especially on a busy checkout screen. The tiny font and subtle coloring render it nearly invisible to the average consumer, who is unlikely to notice, let alone click, such an unobtrusive link amidst the urgency of completing a purchase. Critically, Walmart imposes no obligation for consumers to acknowledge or review the arbitration agreement—or even the Terms of Use—before clicking "Place order" (*id*. ¶¶ 4-6), allowing the transaction to proceed without any affirmative step to ensure awareness of the drastic waiver of judicial rights, and the drastic impacts and limitations on how an arbitration would even be conducted.

This imbalance firmly establishes procedural unconscionability.

**B. Substantive Unconscionability**

Substantive unconscionability focuses on overly harsh or one-sided terms. *Armendariz*, 24 Cal.4th at 114. Walmart's arbitration agreement is replete with such terms.

**1. Mass Action Waiver and Bellwether Procedures**

As discussed above, Section 20, Paragraph 2, includes a prohibition on any "Mass Action" defined as a claimant initiating an arbitration process where their law firm has initiated over 100 arbitration demands against Wal Mart within 180 days. Exhibit A, Dkt. 9-3, at 25 ¶ 2. Paragraph 6 imposes bellwether procedures limiting the initiation of arbitrations to ten "Bellwether Demands" that are coordinated and delaying any remaining claims until 90 days after the total conclusion, including appeals, of these Bellwether Demands. *Id*. at 26 ¶ 6.

As discussed above, in *Heckman v. Live Nation Entertainment, Inc*., 120 F.4th 670 (9th Cir. 2024), the Ninth Circuit held a similar mass arbitration clause and similar bellwether procedures were unconscionable. The court found that such restrictions unfairly favored defendants by stifling efficient resolution of widespread claims, particularly for small consumer claims economically unviable to pursue individually. *Id*. at 678. Walmart's provisions mirror this structure, capping collective action and delaying remaining claims for 90 days post-bellwether (Exhibit A, at 26 ¶ 6). This burdens consumers, shielding Walmart from accountability for systemic issues—like the alleged health data disclosures affecting hundreds of thousands of consumers. Compl. at 12 ¶ 50. Under *Heckman*, these terms are substantively unconscionable.

The Ninth Circuit in *Heckman* explicitly held that "the FAA simply does not apply to and protect the mass arbitration model set forth in Ticketmaster's Terms and New Era's Rules. Because the FAA does not apply, the rule of Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005), governs the case before us. In Discover Bank, the California Supreme Court held that class action waivers in consumer contracts of adhesion are unconscionable under California law." *Heckman*, 120 F.4th at 689. For the same reasons, the *Discover Bank* rule should be applied to the instant Action.

**2. One-Sided Fee-Shifting Provision**

As mentioned above, Wal Mart's arbitration agreement permits the arbitrator to award fees and costs for a "frivolous claim, counterclaim, or appeal" but omits relief for a frivolous defense. Exhibit A, Dkt. 9-3, at 26 ¶ 5(5). This asymmetry violates *Armendariz's* mutuality principle, which deems one-sided cost impositions unconscionable. 24 Cal.4th at 119. By exposing claimants to financial risk without reciprocal exposure for Walmart, the provision deters legitimate claims while shielding Walmart's defenses. This lack of bilaterality is substantively unconscionable.

**3. Limitation on Injunctive Relief Violating *McGill***

Section 20, Paragraph 5(6) of the arbitration agreement, states that "the arbitrator may award relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that individual party's claim." Exhibit A, Dkt. 9-3, at 26 ¶ 5(6). This precludes public injunctive relief, which *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (Cal. 2017), holds cannot be waived. *Id*. at 961.

Plaintiffs seek injunctive relief to halt Walmart's alleged unlawful data disclosures, benefiting the public by protecting California consumers' privacy. Compl. at 15 ¶ 67; 16 ¶ 75. By restricting relief to individual remedies, Walmart's agreement contravenes *McGill*, rendering it unenforceable.

## V. CONCLUSION

Plaintiffs did not unambiguously assent to the instant arbitration agreement, and the agreement is unconscionable for the reasons stated above. The Court should deny Walmart's motion to compel arbitration and stay.

Dated: April 7, 2025 , SETAREH LAW GROUP

/s/Shaun Setareh

SHAUN SETAREH
THOMAS SEGAL
FARRAH GRANT
Attorneys for Plaintiffs
ROBERT BONKOWSKI & ALEX MERKEL