Robert E. Dunn (State Bar No. 275600)
rdunn@eimerstahl.com
EIMER STAHL LLP
1999 South Bascom Avenue
Suite 1025
Campbell, CA 95008
Telephone: (408) 889-1690

*Attorney for Defendant Walmart Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Robert Bonkowski and Alex Merkel, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Walmart Inc.<br><br>Defendant. | Case No. 2:25-cv-01462-DSF (PVCx)<br><br>**DEFENDANT WALMART INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO STAY THIS ACTION PENDING ARBITRATION**<br><br>[Removed from the Superior Court of Los Angeles County, California, No. 25STCV01308]<br><br>Date: May 19, 2025<br>Time: 1:30 P.M.<br>Courtroom: 7D<br><br>District Judge Dale S. Fischer<br>Magistrate Judge Pedro V. Castillo |

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Plaintiffs Agreed to Arbitrate When They Clicked "Place Order" ..... 1

A. Walmart's checkout process provides conspicuous notice ..... 1

B. Plaintiffs assented to the Terms. ..... 4

II. Walmart's Terms Delegate Arbitrability to the Arbitrator ..... 5

III. Plaintiffs Fail to Show That Any Provision in Walmart's Arbitration Agreement Is Unconscionable ..... 7

A. The Terms are not procedurally unconscionable. ..... 7

B. The Terms are not substantively unconscionable. ..... 8

IV. The Federal Arbitration Act Applies to Plaintiffs' Claims ..... 11

V. The Relief Sought Does Not Constitute Public Injunctive Relief ..... 12

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Cases**

*Ajzenman v. Off. of Comm'r of Baseball*,
2020 WL 6031899 (C.D. Cal. Sept. 14, 2020)....................3

*Alfia v. Coinbase Global, Inc.*,
2022 WL 3205036 (N.D. Cal. July 22, 2022)....................8

*AT&T Mobility v. Concepcion*,
563 U.S. 333 (2011)....................12

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....................3, 4

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)....................5, 6

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025).................... passim

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017)....................6

*Cullors v. Cerebral, Inc.*,
2023 WL 5207471 (C.D. Cal. June 20, 2023), *aff'd,* 2024 WL 3385530 (9th Cir. July 12, 2024)....................2

*Ensambles Hyson, S.A. de C.V. v. Sanchez*,
718 F. Supp. 3d 1258 (S.D. Cal. 2024)....................5

*eOnline Glob., Inc. v. Google LLC*,
387 F. Supp. 3d 980 (N.D. Cal. 2019)....................9

*Flores v. Coinbase, Inc.*,
2023 WL 3564756 (C.D. Cal. Apr. 6, 2023)....................5

*G.G. v. Valve Corp.*,
799 F. App'x 557 (9th Cir. 2020)....................6

*Gountoumas v. Giaran, Inc.*,
2018 WL 6930761 (C.D. Cal. 2018)....................6

*Heckman v. Live Nation Ent. Inc.*,
686 F. Supp. 3d 939 (C.D. Cal. 2023)....................7

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024).................... 6, 7, 10, 12

*Hodges v. Comcast Cable Commc'ns*,
21 F.4th 535 (9th Cir. 2021)....................12

*In re Chevron U.S.A., Inc.*,
109 F.3d 1016 (5th Cir. 1997)....................11

*In re Complaint of Ross Island Sand & Gravel*,
226 F.3d 1015 (9th Cir. 2000)....................1

*Keebaugh v. Warner Brothers Entertainment Inc.*,
100 F.4th 1005 (9th Cir. 2024).................... 2, 3, 4

*LeBoeuf v. NVIDIA Corp.*,
2019 WL 13210428 (N.D. Cal. Nov. 18, 2019), *aff'd,* 833 F. App'x 465 (9th Cir. 2021)....................6

*Maynez v. Walmart, Inc.*,
479 F. Supp. 3d 890 (C.D. Cal. 2020)....................2

*McGill v. Citibank, N.A.*,
393 P.3d 85 (Cal. 2017)....................12

*McLellan v. Fitbit, Inc.*,
2017 WL 4551484 (N.D. Cal. Oct. 11, 2017)....................5

*Miller v. Time Warner Cable Inc.*,
2016 WL 7471302 (C.D. Cal. Dec. 27, 2016)....................6

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)....................3, 4

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024)....................3, 4

*Reno v. ACLU*,
521 U.S. 844 (1997)....................4

*Sanchez v. Valencia Holding Co., LLC*,
353 P.3d 741 (Cal. 2015) .......... 7, 8, 9

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016).......... 7, 8

*Viking River Cruises v. Moriana*,
596 U.S. 639 (2022) .......... 12

*Zenelaj v. Handybook Inc.*,
82 F. Supp. 3d 968 (N.D. Cal. 2015) .......... 6

**Statutes**

28 U.S.C. § 1407 .......... 10

**Other Authorities**

AAA, *Arbitrators & Mediators* .......... 7

AAA, *Consumer Arbitration Rules and Mediation Procedures*
(May 1, 2025) .......... 11

AAA, *Rules Update: AAA-ICDR Mass Arbitration Supplementary Rules*
(Apr. 1, 2024) .......... 9

AAA, *Rules, Forms & Fees* .......... 7

U.S. Chamber of Commerce, *Arbitration Shakedown: Coercing Unjustified Settlements* (Feb. 2023) .......... 9, 11

## INTRODUCTION

Plaintiffs oppose Walmart's Motion to Compel Arbitration on the grounds that they never agreed to arbitrate, that Walmart's Terms of Use ("Terms") do not delegate arbitrability to the arbitrator, and that the Terms are unconscionable. These arguments lack merit. Plaintiffs agreed to arbitrate when they clicked on a "Place Order" button directly adjacent to an express notice that placing an order entails agreement to the Terms. The Terms delegate arbitrability to the arbitrator per the AAA rules. And multiple courts have correctly held that the Terms are not unconscionable. Walmart's straightforward motion to compel should be granted.

## ARGUMENT

### I. Plaintiffs Agreed to Arbitrate When They Clicked "Place Order"

Plaintiffs contend that Walmart failed to provide "reasonably conspicuous notice" of the arbitration agreement and that they "did not unambiguously assent" to the agreement when purchasing items on Walmart.com. Opp. at 6–8 (capitalization altered)**. Both arguments fail.**

#### A. Walmart's checkout process provides conspicuous notice.

Plaintiffs assert that the Ninth Circuit's recent decision in *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025), replaced longstanding Ninth Circuit precedent with a new, more "stringent" standard for providing notice of an arbitration agreement. Opp. at 8. According to Plaintiffs, Walmart's checkout process does not satisfy this new standard. *Id*. That argument fails for two reasons.

*First*, *Chabolla* restates existing law and does not overrule prior Ninth Circuit decisions holding that checkout processes like Walmart's provide "reasonably conspicuous notice." *See* Mot. at 8–12. Indeed, as a panel decision, *Chabolla could not* overrule those cases. *See In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1018 (9th Cir. 2000). Rather, the *Chabolla* court applied the existing precedent to the specific facts before it to conclude that the defendant's checkout process did not give sufficient notice. For example, the court approvingly cited

*Keebaugh v. Warner Brothers Entertainment Inc.*, 100 F.4th 1005 (9th Cir. 2024), which Walmart cited in its Motion. *See Chabolla*, 129 F.4th at 1155. *Keebaugh* and the other precedent on which Walmart relied remain good law.

*Second*, even assuming *Chabolla* altered Ninth Circuit precedent, Walmart's notice meets *Chabolla*'s "reasonably conspicuous" standard. In *Chabolla*, website users signed up for health memberships with ClassPass, "a company offering packaged-deal access to gyms." 129 F.4th at 1151. In considering whether the sign-up process bound users to the ClassPass terms of use, the court evaluated several factors. *Id*. at 1155–58. Plaintiffs highlight two—the visual aspects of the sign-up page and the multi-step sign-up process—both of which support Walmart's position.

As to the "[v]isual [a]spects" of the ClassPass website, the court concluded that a user could easily click the "Continue" button without seeing the notice that doing so bound the user to the terms of service, since the button and the notice were separated by a "Sign up with Facebook" option. *Id*. at 1156–58. The court explained that "[a] reasonably prudent user would likely click 'Continue' and read no further if she had no intention of using Facebook." *Id*. at 1157.

By contrast, Walmart's website places the notice directly above or below the "Place Order" button, depending on which process the consumer uses. Mot. at 3–4. There is no "Facebook" option separating the notice from the "Place Order" button. Nor is there any of the other visual clutter described in *Chabolla*. *See* 129 F.4th at 1157 ("[T]he notice seems to fade into the irrelevancy of other aspects of the page," including "images of people exercising[.]"). This Court has thus repeatedly recognized that Walmart's purchase page, and others like it, provide conspicuous notice that clicking "Place Order" constitutes assent to the Terms. *See Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 896 (C.D. Cal. 2020) ("Plaintiff agreed to arbitrate her disputes with Defendant when she placed an order through the Walmart app[.]" (emphasis altered)); *Cullors v. Cerebral, Inc.*, 2023 WL 5207471, at *4 (C.D. Cal. June 20, 2023), *aff'd,* 2024 WL 3385530 (9th Cir. July 12, 2024) (compelling

arbitration where website provided nearly identical notice); *Ajzenman v. Off. of Comm'r of Baseball*, 2020 WL 6031899, at *2 (C.D. Cal. Sept. 14, 2020) (same).

The *Chabolla* court also faulted ClassPass's multi-page signup process. The notice on the first page was not "prominently displayed" and was "deemphasized by the overall design of the webpage." 129 F.4th at 1157 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022)). And while the second and third pages "place[d] the notice of the Terms of Use more centrally," the user had "no means of manifesting her assent to those terms on those screens." *Id.* at 1157–58. The court concluded that "it would be improper to infer that [plaintiff] manifested her assent on screen 1 to a notice she hadn't yet seen on screen 2." *Id.* at 1158. Plaintiffs misleadingly suggest that *Chabolla* held that notice is not reasonably conspicuous if a user must consult a second screen *to view the Terms*. Opp. at 7–8. But the court was not referring to the screen where the terms were located—it was referring to the multiple screens the plaintiff had to navigate *to make her purchase*. *Chabolla*, 129 F.4th at 1152 (noting that the plaintiff had to click "Continue" on each screen). The court did not disturb Ninth Circuit precedent holding that a user may assent to terms that are, as here, provided by hyperlink. *See Keebaugh*, 100 F.4th at 1014; *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023); *cf. Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024).

Plaintiffs wrongly assert that a customer must scroll to page 23 of the Terms for notice of the arbitration provision. Opp. at 7. In fact, the Terms' very first paragraph includes an all-caps arbitration notice. *See* ECF 9-3 (Krsulic Decl. Ex. A) ("IMPORTANT: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION[.]"). Any user who read the Terms could not miss it, just as any user who reviewed the "Place Order" button before clicking it could not miss the directly adjacent notice that he or she thereby agrees to the posted Terms.

Finally, Plaintiffs mischaracterize the notice as printed in "incredibly tiny, difficult to notice, grey (not black) text." Opp. at 7; *see also id.* at 8 (citing *Berman*,

30 F.4th at 857). Walmart's notice is nothing like the deficient notice in *Berman*, which was "so small that it [wa]s barely legible to the naked eye." 30 F.4th at 856–57. Nor does Walmart's checkout page have other distracting design elements around the notice, as was the case in *Berman*. *Id.* On the contrary, Walmart's notice is clearly legible, and the Ninth Circuit has repeatedly upheld notices using similar font sizes where, as here, the notice is "displayed directly above or below the action button." *Oberstein*, 60 F.4th at 516; *accord Patrick*, 93 F.4th at 477; *cf. Chabolla*, 129 F.4th at 1163–65 (Bybee, J., dissenting) (displaying screenshots of the notices upheld in *Oberstein* and *Patrick*).

The fact that the hyperlink to the Terms is in gray font does not make the notice less reasonably conspicuous. The *Chabolla* court expressly disavowed creating a "bright-line test" for "particular design element[s]," including hyperlink font color. 129 F.4th at 1156. And the Ninth Circuit has upheld hyperlinks of various colors; what matters is that the text is "contrasted against the surrounding . . . background." *See Patrick*, 93 F.4th at 477; *accord Keebaugh*, 100 F.4th at 1020. Here, the hyperlinked text contrasts with the background and is underlined, a design choice the Supreme Court has recognized as "[t]ypically" indicating the presence of a hyperlink. *Reno v. ACLU*, 521 U.S. 844, 852 (1997). A "reasonably prudent" user of the Internet in 2025 would understand that the notice includes a hyperlink and would thus understand that the notice provides access to the Terms.

**B. Plaintiffs assented to the Terms.**

Plaintiffs also contend (citing *Chabolla*) that they did not manifest their assent to the Terms when they clicked the "Place Order" button. Opp. at 8. But *Chabolla* involved a wording mismatch between the notice and sign-up button: the notice said consumers agreed to the Terms "[b]y signing up," but the relevant button was merely labeled "Continue." 129 F.4th at 1158. "At no point on any screen" was the user "advised that a particular action has 'signed her up' or will 'sign her up.'" *Id.* Thus, it was "up to the user to *assume* that . . . clicking the 'Continue' button amounts to

'signing up.'" *Id.* (emphasis added). There is no such ambiguity on Walmart's webpage. The purchase button is labeled "Place Order," and the notice says that consumers agree to the Terms of Use "[b]y placing this order." Mot. at 3–4. A user need not make any assumptions or inferences to understand that clicking "Place Order" is "placing [the] order." *Chabolla* thus provides no support for Plaintiffs' argument that they did not manifest assent to the Terms when they clicked the "Place Order" button. Accordingly, Plaintiffs agreed to be bound by Walmart's arbitration agreement.[1]

## II. Walmart's Terms Delegate Arbitrability to the Arbitrator

Plaintiffs do not dispute that the Terms incorporate the AAA rules, or that those rules authorize the arbitrator to decide gateway arbitrability issues. Plaintiffs nevertheless contend that this is insufficient to delegate gateway questions and that the delegation provision is unconscionable. Opp. at 8–11. Plaintiffs are wrong.

Plaintiffs assert that district courts in the Ninth Circuit have "generally held" that the Ninth Circuit's holding in *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)—which recognized that incorporation of the AAA rules effectively delegates gateway questions to the arbitrator—does not apply "where the party opposing arbitration is not a sophisticated party." Opp. at 8–9. Not so. Many district courts in this Circuit have agreed that the rule laid down in *Brennan* applies "regardless of [a party's] sophistication." *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *3 (N.D. Cal. Oct. 11, 2017).[2] This makes good sense, as a consumer

---

[1] If the Court concludes that *Chabolla* materially altered the standard governing this case and that Walmart's sign-up process somehow fails that standard, the Court should postpone decision on this motion while the Ninth Circuit resolves ClassPass's rehearing petition. *See* Pet. for Panel Reh'g & Reh'g En Banc, *Chabolla v. ClassPass Inc.*, No. 23-15999 (9th Cir. filed Apr. 14, 2025), ECF 48.

[2] *Accord Ensambles Hyson, S.A. de C.V. v. Sanchez*, 718 F. Supp. 3d 1258, 1268 (S.D. Cal. 2024); *Flores v. Coinbase, Inc.*, 2023 WL 3564756, at *5 (C.D. Cal. Apr. 6, 2023) (holding, in the context of consumer arbitration, that "[i]ncorporation of

interested in the particulars of an arbitration provision can easily review AAA's rules. *See id.* ("[C]ourts do not presume that consumers are categorically naïve or gullible contracting parties."). Besides, "[t]he factors that might make someone 'sophisticated' are poorly suited to a standard definition that parties can rely upon to avoid uncertainty or surprise in the meaning of the instrument they signed." *Id*. And the *Brennan* court itself cautioned that its holding "should not be interpreted to require that the contracting parties be sophisticated." 796 F.3d at 1130.

Plaintiffs fare no better in their reliance on *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024). Opp. 11–15. In Plaintiffs' telling, *Heckman* requires courts to examine every arbitration agreement as a whole (including the purported unconscionability of any part of such agreement) in order to decide whether a delegation provision in that agreement is unconscionable. That would render all delegation provisions nugatory, as the whole point of delegation is to allow the arbitrator to resolve gateway arbitrability issues such as unconscionability. *Heckman* did not endorse such a counter-intuitive rule. Rather, *Heckman* addressed a unique situation where a defendant attempted to delegate arbitrability to a "newly formed" arbitration provider called New Era, whose rules "differ[ed] significantly from the rules of traditional arbitration fora such as . . . [AAA]." *Heckman*, 120 F.4th at 677–78. The court concluded that the provision delegating arbitrability issues to this novel forum—which had been established with a "remarkable degree of coordination" with defendant's counsel—was

---

arbitration rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *LeBoeuf v. NVIDIA Corp.*, 2019 WL 13210428, at *8 (N.D. Cal. Nov. 18, 2019), *aff'd,* 833 F. App'x 465 (9th Cir. 2021); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017); *Gountoumas v. Giaran, Inc.*, 2018 WL 6930761, at *6 (C.D. Cal. 2018); *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973 (N.D. Cal. 2015); *Miller v. Time Warner Cable Inc.*, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016); *cf. G.G. v. Valve Corp*., 799 F. App'x 557, 558 (9th Cir. 2020) (reaching the same result under Wisconsin law).

unconscionable. *Id*. at 677 (quoting *Heckman v. Live Nation Ent. Inc*., 686 F. Supp. 3d 939, 958 n.13 (C.D. Cal. 2023)).[3] But nothing in that decision suggests that a district court must determine the unconscionability of every delegation provision by first analyzing the unconscionability of *other* matters delegated to the arbitrator. That would upend arbitration law.

Here, Walmart has delegated arbitrability to AAA, a "traditional arbitration for[um]." *Heckman*, 120 F.4th at 678. Plaintiffs do not argue that the AAA's arbitration procedures are unconscionable, nor could they. AAA is recognized as the gold standard in arbitration, with a neutral, transparent system of rules and arbitrators who are often former state and federal judges. *See* AAA, *Arbitrators & Mediators*; AAA, *Rules, Forms & Fees*.[4] *Heckman* is therefore inapposite, and the Court should allow the arbitrator to decide whether the Terms are unconscionable.

## III. Plaintiffs Fail to Show That Any Provision in Walmart's Arbitration Agreement Is Unconscionable

If the Court declines to delegate the gateway arbitrability issues, it should nevertheless compel arbitration because the Terms are valid and enforceable. To prevail on their argument that Walmart's Terms are unconscionable, Plaintiffs must show "[b]oth procedural and substantive unconscionability." *Tompkins v. 23andMe, Inc*., 840 F.3d 1016, 1023 (9th Cir. 2016). They have not done so.

### A. The Terms are not procedurally unconscionable.

Procedural unconscionability "focus[es] on oppression or surprise due to unequal bargaining power." *Id.* (quoting *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 748 (Cal. 2015)). Plaintiffs contend there is oppression because "Walmart's Terms of Use are a classic adhesion contract" and Plaintiffs "had no

---

[3] Indeed, in *Heckman*, the defendant "provided nearly all of New Era's revenue during its first year," leaving "a strong and inescapable perception of bias" in favor of the defendant. 120 F.4th at 694 (VanDyke, J., concurring in the judgment).

[4] https://adr.org/aaa-panel; https://adr.org/Rules.

opportunity to negotiate or opt out of the arbitration provision." Opp. at 15. But "showing a contract is one of adhesion does not always establish procedural unconscionability." *Alfia v. Coinbase Global, Inc.*, 2022 WL 3205036, at *3 (N.D. Cal. July 22, 2022) (citation omitted). Rather, "whether a contract of adhesion is oppressive" depends on commonsense "factors, including . . . access to reasonable market alternatives." *Id.* Plaintiffs do not even argue, much less show, that Walmart.com was the "only option" for any consumer products they ordered. *See id.* at *4. Accordingly, any oppression that may exist is "minimal." *Id.*

Plaintiffs argue that a reasonable user would be surprised to learn they had assented to an arbitration agreement because Walmart's arbitration provision is "buried" on page 23 of the Terms. Opp. at 16. But, as already noted, the very first paragraph of the Terms contains a notice, in all caps, that the terms contain an arbitration agreement. *See* ECF 9-3 (Krsulic Decl. Ex. A). Even if Plaintiffs had to scroll down to review the details, they can hardly claim to have been surprised by the fact that the Terms require them to arbitrate their disputes with Walmart.

**B. The Terms are not substantively unconscionable.**

Substantive unconscionability focuses "on overly harsh or one-sided results." *Tompkins*, 840 F.3d at 1023 (quoting *Sanchez*, 353 P.3d at 748). Plaintiffs assert that three provisions of Walmart's arbitration agreement are unconscionable: the Mass Action Waiver, the bellwether provision, and the fee-shifting provision. Opp. 16–18. These arguments lack merit.

**1. Mass Action Waiver.** The Mass Action Waiver provides that the parties waive the right to have a dispute resolved as a "Mass Action," which means a "situation in which a party is represented by a law firm . . . that has initiated more than one hundred (100) arbitration Demands with common questions of law or fact against Walmart within 180 days." ECF 9-3 § 20-2 (Krsulic Decl. Ex. A). This provision has no relevance here because Plaintiffs' counsel has *not* filed more than 100 arbitration demands against Walmart within the past 180 days. The Terms thus

do not hinder Plaintiffs from using their preferred counsel. Plaintiffs cannot escape their obligation to arbitrate by raising the possibility that the provision might be unconscionable as applied to a *different* plaintiff. *Cf. eOnline Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980, 989 (N.D. Cal. 2019) (plaintiffs lack standing to claim a contractual provision is unconscionable when it "has no impact on them").

Even if the Mass Action Waiver applied to Plaintiffs, it should be upheld. An arbitration provision may offer a "'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." *See Sanchez*, 353 P.3d at 749 (citation omitted). The Mass Action Waiver was designed to protect Walmart against the risk of extortion from mass arbitration. Until recently, if a plaintiffs' attorney brought 10,000 arbitrations simultaneously, Walmart would be faced with exorbitant fees completely independent of the merits of the claims.[5] As the U.S. Chamber of Commerce has explained, "'[t]he mass-arbitration model operates on its ability to impose significant in terrorem settlement pressure' through the imposition of 'astounding' fees that 'can spell financial catastrophe[.]'" U.S. Chamber of Commerce, *Arbitration Shakedown: Coercing Unjustified Settlements* at 24 (Feb. 2023) [hereinafter *Arbitration Shakedown*] (footnote and citation omitted).[6] "Even if the claims are meritless, or completely frivolous, the business is between a rock and a hard place: it is either pressured to settle (or abandon arbitration altogether) or forced to pay that huge fee bill simply to have the chance to defend itself." *Id*. at 2. By preventing attorneys from using mass-arbitration tactics to extort settlements

---

[5] AAA has recently revised its rules to reduce the extortionate fee-pressure of mass arbitrations, so the Mass Action Waiver may be unnecessary in the future. *See* AAA, *Rules Update: AAA-ICDR Mass Arbitration Supplementary Rules* (effective Apr. 1, 2024), https://tinyurl.com/ycy7pt4k (filing fees are now "flat regardless of the filing size").

[6] https://tinyurl.com/2pyu5736.

from Walmart, the Mass Action Waiver serves a "legitimate commercial need."

Even if the Mass Action Waiver were unconscionable, it would be severable. The Terms state that if a court finds a provision in that section invalid or unenforceable, that provision "shall be severed from the Terms." ECF 9-3 § 20-7 (Krsulic Decl. Ex. A). There is one exception to this rule: if the Mass Action Waiver is "held invalid or unenforceable *as to a particular dispute or claim*," then the whole agreement falls with it. *Id*. (emphasis added). But Plaintiffs do not bring a Mass Action here, so the Mass Action Waiver cannot be "held invalid or unenforceable as to [Plaintiffs'] dispute or claim." *See id.* Accordingly, even if the Court were to find the Mass Action Waiver unconscionable, it should sever that provision and compel arbitration under the remainder of the agreement.

**2. Bellwether provision.** The bellwether provision states that when a law firm brings twenty-five or more arbitration demands involving "common questions of law and fact," the parties "shall" select "a total of ten" demands—the "Bellwether Demands"—"to be filed with AAA" and arbitrated before ten different arbitrators. ECF 9-3 § 20-6 (Krsulic Decl. Ex. A). "After ninety (90) days from the date all Bellwether Demands have been arbitrated and any appeals exhausted, any remaining Demands subject to this paragraph may be filed[.]" *Id*.

This provision, like the Mass Action Waiver, is inapplicable to Plaintiffs because their lawyers have not filed more than twenty-five similar demands. Regardless, Plaintiffs' analogy to the bellwether provision held unconscionable in *Heckman* fails. *See* Opp. at 17. The fatal defect in *Heckman* was that *all plaintiffs* were bound by the results of the bellwethers even though the absent plaintiffs had no opportunity to participate. 120 F.4th at 684. Under Walmart's provision, by contrast, bellwethers bind only the plaintiffs participating in them. The bellwethers provide information that other parties can use to evaluate settlement, but all plaintiffs retain the opportunity to arbitrate their own cases. Walmart's procedures are thus like those used in multidistrict litigation, *see generally* 28 U.S.C. § 1407, which

benefit both defendants and plaintiffs by facilitating settlement and allowing "meritorious claims [to] be paid much sooner." *Arbitration Shakedown*, *supra*, at 51 (footnote omitted); *see also In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) (outlining benefits to plaintiffs of bellwether procedures).

At all events, this provision would be severable even if unconscionable.

**3. Fee-shifting provision.** The Terms require a party to pay arbitration costs and attorneys' fees if it files a "frivolous" "claim, counterclaim, or appeal." ECF 9-3 § 20-5-5 (Krsulic Decl. Ex. A). Plaintiffs contend that this fee-shifting provision is unconscionable because the arbitration agreement does not likewise shift the costs for a frivolous defense. Opp. at 14. But there is nothing one-sided about the fee-shifting provision, which applies to both parties. If Walmart asserted a frivolous counterclaim, for example, Walmart would have to pay the plaintiff's attorneys' fees. Nor is it unfair to require a party asserting a frivolous claim to pay costs. Under the AAA Consumer Arbitration Rules, Walmart pays most (or all) of the costs of arbitration.[7] Plaintiffs' attorneys can thus extort Walmart by filing frivolous claims and using exorbitant filing fees as settlement leverage. *See Arbitration Shakedown*, *supra*, at 24. Walmart has no corresponding incentive to assert frivolous defenses. Doing so would simply drive up Walmart's arbitration costs and its own attorneys' fees without giving it any settlement leverage. Asserting a frivolous defense is unlikely even to be an effective delay tactic in arbitration, where discovery is streamlined and awards are issued much more quickly than in court.

Even if this provision were unconscionable, it too would have to be severed.

## IV. The Federal Arbitration Act Applies to Plaintiffs' Claims

Plaintiffs contend that the Federal Arbitration Act ("FAA") does not apply to Walmart's arbitration provision and that California's *Discover Bank* rule thus governs and renders Walmart's class action waiver unconscionable. Opp. at 17. That

[7] AAA, *Consumer Arbitration Rules and Mediation Procedures* (effective May 1, 2025), https://tinyurl.com/2zpwnce7.

argument, based on *Heckman*, makes no sense. The Ninth Circuit held in *Heckman* that the FAA did not apply to an agreement requiring *consolidated* arbitration, a form of arbitration that Congress did not envision when it enacted the FAA. 120 F.4th at 689–90 ("FAA precedents treat *bilateral arbitration* as the prototype of the *individualized* and informal form of arbitration protected from undue state interference by the FAA.") (quoting *Viking River Cruises v. Moriana*, 596 U.S. 639, 656–57 (2022)). Walmart's Terms, by contrast, require *individual* arbitration, which is exactly the type of arbitration the FAA was designed to protect. The FAA thus applies and preempts the *Discover Bank* rule. *See AT&T Mobility v. Concepcion*, 563 U.S. 333, 352 (2011).

**V. The Relief Sought Does Not Constitute Public Injunctive Relief**

Finally, Plaintiffs argue that their claims cannot be arbitrated because they seek public injunctive relief. Opp. at 18; *see McGill v. Citibank, N.A.*, 393 P.3d 85, 87 (Cal. 2017). But the Ninth Circuit has held that "public injunctive relief within the meaning of *McGill*" must benefit "the general public as a whole, as opposed to a particular class of persons." *Hodges v. Comcast Cable Commc'ns*, 21 F.4th 535, 542 (9th Cir. 2021) (relief on behalf of Comcast cable subscribers was not public injunctive relief). Here, Plaintiffs' requested injunction would benefit only "California residents who, during the class period, had their personally identifiable information or protected health information improperly disclosed to Facebook as a result of using walmart.com." Compl. ¶ 46. The proposed beneficiaries are thus a "defined group of similarly situated persons, rather than the general public." *Hodges*, 21 F.4th at 543. The *McGill* rule is thus no barrier to arbitrating Plaintiffs' claims.

**CONCLUSION**

Walmart respectfully asks this Court to GRANT its Motion to Compel Arbitration and stay this case pending arbitration in AAA.

Dated: May 5, 2025

Respectfully submitted,

By: /s/ *Robert E. Dunn*

Robert E. Dunn (State Bar No. 275600)
rdunn@eimerstahl.com
EIMER STAHL LLP
1999 South Bascom Avenue
Suite 1025
Campbell, CA 95008
Telephone: (408) 889-1690

*Attorney for Defendant Walmart Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Walmart Inc., certifies that this Reply contains 4,087 words, which complies with the word limit of L.R. 11-6.1. The undersigned further certifies that this Reply contains 12 pages, which complies with the page limit set forth in Rule 4.c. of Judge Fischer's standing order.

Dated: May 5, 2025

*/s/ Robert E. Dunn*
Robert E. Dunn

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2025, the foregoing document was filed electronically with the Clerk of the Court and sent by electronic mail to the following:

Shaun Setareh
shaun@setarehlaw.com
Thomas Segal
thomas@setarehlaw.com
Brian Louis
brian@setarehlaw.com
SETAREH LAW GROUP
420 N. Camden Drive, Suite 100
Beverly Hills, California 90210

Dated: May 5, 2025

*/s/ Robert E. Dunn*
Robert E. Dunn